UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDER CARNO,

                              Plaintiff,

        -against-

THE UNITED STATES OF AMERICA, FEDERAL
BUREAU OF PRISONS, WESTCHESTER
COUNTY JAIL, CORRECT CARE SOLUTIONS
INC., WARDEN OR SUPERINTENDENT OR
SHERIFF OF WESTCHESTER COUNTY JAIL,
MEDICAL DIRECTOR OR CEO OF CORRECT
CARE SOLUTIONS, ACTING DIRECTOR OF
FEDERAL BUREAU OF PRISONS,

                              Defendants.

17 cv 7998 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Alexander Carno ("Plaintiff") brings an action against the United States of America ("United States" or "Government"), Federal Bureau of Prisons ("BOP"), and Acting Director of Federal Bureau of Prisons, (together, "Federal Defendants"); Correct Care Solutions Inc. and Medical Director or CEO of Correct Care Solutions, Inc. (together "Correct Care Defendants"), Westchester County Jail and Warden or Superintendent or Sheriff of Westchester County Jail, (together, "Westchester Defendants"), (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, *Monell v. Dept't of Soc. Serv. of the City of N.Y.*, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671 *et seq.* (*See* Complaint, ECF No. 2.)

Before the Court are three motions to dismiss, filed by Westchester Defendants, Correct Care Defendants, and Federal Defendants, respectively. (*See* ECF Nos. 59, 68, 75.)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/28/2019

1

For the following reasons, the Motions to Dismiss are GRANTED. The Federal Defendants' Motion is dismissed *with prejudice*, while Westchester and Correct Care Defendants' Motions are dismissed *without prejudice*. Plaintiff is granted leave to amend his Complaint.[1]

## BACKGROUND

The following facts, taken from the Complaint, are presumed true for the purpose of deciding this motion. On October 9, 2015, Plaintiff was arrested in White Plains, New York for sex trafficking. Plaintiff was held in default of $10,000 bail, which he quickly made, and was thus free for over a month. On November 23, 2015, Plaintiff was arrested again, this time by the Federal Bureau of Investigations ("FBI"). The FBI charged Plaintiff for sex trafficking. Following this arrest, Plaintiff was held without bail and sent to Westchester County Jail in Valhalla, New York.

Plaintiff was booked into the Westchester County Jail and was originally placed in the 1 West block of the facility. Two months after arrival, Plaintiff was transferred to the 3 West block of the facility, where he resided at the time of the incident that is the subject of his Complaint.

On April 9, 2016, Plaintiff was talking to another inmate in the 3 West block of the facility. During Plaintiff's conversation with the other inmate, he sat on a radiator with both his hands and his buttocks touching the radiator. There was no sign that cautioned the radiator being hot, and at no point did any of the correctional officers order Plaintiff not to sit on the radiator.

After approximately five minutes of sitting on the radiator, Plaintiff suddenly realized that the part of his pants that had been in contact with the radiator was wet. Upon realizing that his

---

[1] The Court notes that Plaintiff attempted to file an amended complaint on July 25, 2018. (*See* ECF Nos. 49, 49-1.) This proposed amended complaint contained additional defendants: John Does 1-5 and a Jane Doe 1. (*Id.*) It also contained more detailed allegations about the individual conduct of these John Doe Defendants.

The Court denied Plaintiff's proposed amended complaint at that juncture because the pending motions to dismiss had already been filed. (*See* ECF No. 54.) Now that the Court has ruled on these motions, Plaintiff is permitted to file an amended complaint, in similar form, addressing the individual conduct of all the relevant parties and also addressing any other deficiencies described in this Opinion.

pants were wet, Plaintiff returned to his cell and removed his pants to see what the cause of the moisture was. Plaintiff discovered that his skin had been burned by the radiator, and his buttocks were bleeding profusely.

At 9:45pm that night, Plaintiff flagged down a correctional officer who was making his rounds. Plaintiff informed the officer that he had a medical emergency and told him that "he had burned his ass." The officer told Plaintiff he would call for medical attention immediately. Plaintiff remained in his cell and did not hear from the Officer for almost an hour. At 10:30pm, the same officer whom Plaintiff had alerted, was making his rounds again. Plaintiff flagged him down again and asked if medical would see him. Plaintiff was still bleeding profusely from the burn. The officer told Plaintiff that medical was busy elsewhere in the facility with an emergency. He then shut down the 3 West block for the night without providing Plaintiff medical attention.

At 11:00pm, a different correctional officer came to the 3 West block to make rounds. Plaintiff now informed this officer of his medical emergency. The officer did not believe that Plaintiff was burned and bleeding, so Plaintiff removed his pants to show the officer. The officer was disgusted by the sight of the burn and told Plaintiff that he would get him medical help. Plaintiff remained in his cell for another two and a half hours. Finally, at 1:30am, the corrections officer returned to retrieve Plaintiff and bring him to the medical department of the facility.

At the medical department, the on-call nurse took a picture of the burns and sent them to an on-call provider, Correct Care Solutions, to determine the correct course of action for the injury. The nurse talked on the phone with Correct Care Solutions and discussed the injury for a few minutes. After getting off the phone, the nurse bandaged Plaintiff, and sent him to his cell with Tylenol to get him through the night. But Plaintiff's burns were so severe that Tylenol allegedly could not minimize the excruciating pain that Plaintiff felt throughout the night.

At 8:00am the next morning, an officer got Plaintiff from his cell and returned him to the medical department. Plaintiff was taken to Correct Care Solutions where it was determined that Plaintiff would need to be taken to the Westchester Medical Center Hospital for further evaluation and treatment. During Plaintiff's transport to hospital he had to sit "upon hard cold steel in a van, not an ambulance."

Once Plaintiff arrived at the emergency room of Westchester Medical Center, he was diagnosed with having third degree burns on his buttocks. Plaintiff was admitted into the Westchester Medical Center burn unit. Plaintiff remained in the burn unit for 27 days. During these 27 days Plaintiff underwent surgery, along with various neurological and dermatological treatments. Following these treatments, Westchester Medical Center informed Westchester County Jail, and Correct Care Solutions that Plaintiff needed continuing neurological and skin treatment. On October 16, 2017, Plaintiff filed the instant Complaint against Federal Defendants, Correct Care Defendants, and Westchester Defendants. Plaintiff seeks $1,000,000.00 in damages.

**Additional Facts Pertinent to Fed. R. Civ. P. 12(b)(1)**

Westchester County Jail contracts with the United States Marshall Service ("USMS") to hold federal prisoners along with the local county prisoners. The contractual agreement between Westchester County Jail and USMS states: "The Local Government agrees to accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local law, standards, policies, procedures, or court orders applicable to the operations of the facility."

The Court is permitted to assess this contract without converting any of the motions to dismiss to a motion for summary judgment, as it is for the limited purpose of assessing proper subject matter jurisdiction pursuant Fed.R.Civ.P. 12(b)(1). *Zappia v. Emirate*, 215 F.3d 247

("[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.").

## LEGAL STANDARDS

### Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1)

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

For motions brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the

pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read *pro se* complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally.") "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted).

**Section 1983 Actions**

Section 1983 provides, in relevant part, that:"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

### *Monell* **Liability**

A municipality, like Defendant Westchester County, may be sued under § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Such a claim is commonly referred to as a *Monell* claim. A plaintiff asserting a *Monell* claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two-prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Village of Haverstraw*, 768 F.2d 40,

44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused [the plaintiff's] injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

A complaint must include more than broad or vague allegations to support a *Monell* claim. "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *see also Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations). Similarly, it is not enough to allege simply that a municipal policy or custom exists. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Additionally, a municipality may not be held liable under § 1983 on a *respondeat superior* theory solely because the municipality employs an individual who violated the law. *Monell,* 436 U.S. at 692. For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law. *See Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), *rev'd on other grounds*, 219 F.3d 202 (2d Cir. 2000).

**Eighth Amendment and Medical Indifference**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Therefore, the

Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. 460, 469, 132 S. Ct. 2455, 2463, 183 L. Ed. 2d 407 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183, 1189, 161 L. Ed. 2d 1 (2005). The right emanates from the basic precept of justice that punishment for crime should be graduated and proportioned to [the] offense. *Roper*, 543 U.S. at 560 (citations and internal quotations omitted). "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Id.*

In order to assert an Eighth Amendment claim for medical indifference, plaintiff must plead facts to establish that defendant acted with "deliberate indifference to serious medical needs." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). It is well-established that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, [and that] not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eight Amendment violation." *Salahuddin v. Goord*, 467 F.3d 279 (2d Cir. 2006) (internal quotations omitted).

Medical deliberate indifference claims under Eighth Amendment of the U.S. Constitution and Section 1983 require courts to engage in a two-part inquiry, one objective and the other subjective. The subjective inquiry focuses on the defendant's motive and the objective inquiry on the conduct's effect. *Chance, 143 F.3d at 702*. "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Id.* A "sufficiently serious" medical need is a "condition of urgency, one that may produce

death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). A prison official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety…" *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Deliberate indifference also requires the prisoner to "prove that that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle*, 429 U.S. 97, 104 (1976).

**Federal Tort Claims Act**

Under the Eleventh Amendment to the U.S. Constitution, the United States, as a sovereign, is immune from suits raising Constitutional violations. U.S. Const. Amend. XI. ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.") At the same time, the Supreme Court has held that Congress can abrogate state sovereign immunity through legislation such as the FTCA. The FTCA creates a statutory exception to the United States' general sovereign immunity and provides that the United States may be subject to suit for injuries suffered by federal prisoners confined in federal facilities, provided that they suffer at the behest of federal employees. *United States v. Muniz*, 1963, 374 U.S. 150, 83 S.Ct. 1850 (1963).

At the same time, the FTCA does not waive the government's sovereign immunity *carte blanche*. For example, it does not waive immunity for tort claims against agencies or individuals in their official capacity. *See* 28 U.S.C 2679 (a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on

claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.") Additionally, FTCA Section 2671 states that any contractor of the United States is excluded from being considered an employee. "Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by independent contractors" *Logue v. United States*, 412 U.S. 521, 93 S. Ct. 2215 (1973).

## DISCUSSION

Separate motions to dismiss have been filed by the Federal Defendants, Correct Care Defendants, and Westchester Defendants. The Court generally addresses each separately.

### Federal Defendants

Federal Defendants move to dismiss the claims against them on several grounds. First, they argue that the United States, as a sovereign, is immune from any constitutional claims alleged against them. (Federal Defendants Motion, ("Fed. Def. Mem."), ECF No. 76, at 5.) Next, they argue that the BOP and Acting Director are improper defendants in any FTCA action. (*Id.* at 6.) Third, they argue that the independent contractor exemption bars Plaintiff's FTCA claims against the United States for any negligent acts done by non-federal employees. (*Id.*) Last, they argue that the "discretionary function exemption" bars any FTCA claims relating to the decision by the federal government to contract with Westchester County. (*Id.* at 9.) The Court agrees with each.

### *Non-FTCA Constitutional Claims Against United States and its Agents*

Federal Defendants correctly note that "[T]he United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Thus, to establish subject matter jurisdiction, a plaintiff must identify an applicable waiver of the sovereign immunity. *De Masi v. Schumer*, 608 F. Supp. 2d 516, 524 (S.D.N.Y. 2009) (citing *Makarova*, 201 F.3d at 113).

Plaintiff here has not done so. Apart from checking a box on his Complaint indicating that he alleges a "violation of [his] federal constitutional rights" he does not note any statute that implicates the United States' liability. Hence, any general constitutional torts he is attempting to allege are barred by sovereign immunity.

Similarly, to the extent Plaintiff alleges constitutional tort claims against the BOP and Acting Director of the BOP in his official capacity, the Court must dismiss them. Tort suits against government officials are considered suits against the United States and are similarly barred by sovereign immunity.

Accordingly, the United States, BOP, and acting Director of the BOP in his official capacity are all immune from Plaintiff's constitutional tort claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("By definition, federal law, not state law, provides the sources of liability for a claim alleging the deprivation of a federal constitutional right…the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

Pursuant to the Court's duty to construe *pro se* plaintiffs' claims liberally the Court reads Plaintiff's complaint as attempting to raise tort claims against Federal Defendants however possible. It therefore next assesses whether Plaintiff has cognizably pleaded tort claims against the United States or its federal agencies pursuant to the Federal Tort Claims Act ("FTCA").

*FTCA Claims Against BOP and Acting Director of BOP*

Federal Defendants argue that the BOP and Acting Director of the BOP are improper defendants for any FTCA action. (Fed. Def. Mem. at 6.) They argue that the FTCA does not waive the government's immunity for tort claims against agencies or individuals in their official capacity. 28 U.S.C 2679 (a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable…").

The case law supports this. *See Point-Dujour v. U.S. Postal Serv.,*

> If the plaintiff chooses to re-file, he should note that both the United States Postal Service and Amadu Haruna are improper defendants to this action. In enacting the FTCA, the United States explicitly waived its sovereign immunity with respect to certain common law tort claims. *However, this waiver of immunity does not apply to suits brought pursuant to the FTCA against federal agencies*…. Accordingly, the Postal Service may not be sued directly on claims brought under the FTCA.

No. 02 CIV. 6840, 2003 WL 1745290, at *3 (S.D.N.Y. Mar. 31, 2003) (emphasis added). The clear consensus is that official government agencies are immune from general FTCA liability. *See also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (dismissing FTCA claims as a matter of law against Air Force Exchange Service, a federal agency under the Air Force and Army, and instead permitting those claims to be asserted against the United States). Accordingly, all FTCA claims alleged against BOP and its Acting Director are dismissed as a matter of law. To the extent Plaintiff is attempting to raise FTCA claims, they may only be raised against the United States. However, for the following reasons, those claims are still improper.

### *Independent Contractor Exemption*

In order for the United States to be liable for torts, the FTCA requires that those torts be committed by *federal employees*. Hence, Federal Defendants next argue that Plaintiff does not make any allegations regarding acts or omissions by federal employees, but rather seeks to hold Federal Defendants liable for the acts of Westchester County employees and Westchester's County's contracted medical providers. (Fed. Def. Mem. at 6.) As such, they argue that the FTCA's independent contractor exemption prohibits such liability.

The FTCA defines federal employees as follows:

> "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States,

> whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

28 U.S.C § 2680 (a). In *Logue,* the Supreme Court explained that while the definition of "federal agency" in the FTCA includes "the executive departments, the military departments, and independent establishments of the United States," it "does not include any contractor with the United States." 412 U.S. at 526. It also explained, based on an in-depth review of the statute's legislative history, that Congress crafted this waiver intentionally, contemplating that the United States would not be liable for conduct by a third-party with whom it merely contracted and where that third-party contractor was managing a facility's day-to-day operations. *Id*. at 529.

Following *Logue*, numerous courts across the country assessed FTCA claims brought against the federal government for various constitutional torts that occurred to incarcerated inmates, whether pre-trial detainees, convicts, or immigrant detainees. Where those courts found contracts delegating the day-to-day operations and management of "housing, safekeeping, and subsistence of federal prisoners" or detainees to local service providers, the employees of those services were not deemed "federal employees" under the FTCA, notwithstanding that the federal government still had broad oversight on those facilities. *See e.g. Johnson v. United States*, No. 5-cv-40, 2006 WL 572312 (E.D. Va. Mar. 7, 2006) (finding no liability for federal government where contract between U.S. Marshals Service and Virginia jail provider delegated to Virginia jail provider the responsibility for "housing, safekeeping, and subsistence of federal prisoners"); *Henry v. United States*, No. 10-CV-4718, 2013 WL 5972671 (E.D.N.Y. Nov. 5, 2013) (finding no liability for federal government where contract between U.S. Marshals Service and County Correctional Facility provided that facility would "accept and provide for the secure custody,

safekeeping, housing, subsistence and care of federal detainees"); *see also Acosta v. U.S. Marshals Serv.*, 445 F.3d 509 (1st Cir. 2006).

The Supreme Court in *Logue* and its progeny reason that when liability stems from a local facility's negligence, and the local facility merely had an arm's length contract with the federal government, liability more appropriately rests with that local facility. This is because, while the federal government may have certain compliance requirements, the local facility is functionally in charge of the day-to-day operations and supervises employees directly, rather than the federal government. *See Logue*, 412 U.S. at 525.

Here, the contract between USMS and Westchester County provides for "the housing, safekeeping, and subsistence of federal prisoners." (*See* Charles Jacob Dec. Ex A, ("Contract"), ECF No. 77-1.) Further, while the initial contract required the Local Government to notify USMS as soon as possible when medical emergencies arose that required "removal of a prisoner from the facility" as well as "prior authorization" from USMS, the contract was modified in 2007 so that:

> The Local Government shall accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local laws, standards, polices, procedures, or court orders applicable to the operations of the Medical Center.

(*See id.*) Hence, in 2015, when Plaintiff suffered his medical emergency, the newer provisions were in effect. These provisions put the onus and responsibility for prisoner medical care in the hands of the Local Government, abdicating any previous duties that were on USMS.

The renewed contract is just the type of contract contemplated by *Logue* and its progeny, in that it directs Westchester County to manage and supervise federal prisoners on a day-to-day basis, and only requires the County to meet federal compliance standards. Accordingly, Westchester County is deemed an independent contractor with the United States, for which the

independent contractor exemption applies. Therefore, the United States may not be liable for acts taken by employees of Westchester County.

*Discretionary Function Exemption*

Federal Defendants lastly argue that Plaintiff also cannot bring an FTCA claim against the United States for USMS's decision to contract with Westchester County. (Fed. Def. Mem. at 9.) They explain that while the FTCA permits actions for damages against the United States for injuries caused by the tortious conduct of United States employees or agents, the FTCA also includes a section that expressly limits the immunity waiver in certain circumstances. *See* 28 U.S.C. § 2680 (titled "Exceptions"). This section excepts "[a]ny claim … based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Court agrees with Federal Defendants. The Second Circuit has explained that the purpose of the discretionary function exception in the FTCA is to protect separation of powers and to "protect certain governmental activities from exposure to suit by private individuals." *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 190 (2d Cir. 2008) (citation omitted). It also explained that the exception specifically protects the federal government from liability when it partakes in legal activity, but a private individual commits a tort in the scope of that activity. *Id.*

Assessing the discretionary function exception is a two-part inquiry. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). First, the challenged actions "must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation," and second, "the judgment or choice in question must be grounded in considerations of public

policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir 2000) (citing *Gaubert*, 499 U.S. at 322-23).

Here, the first part of the inquiry is met. While USMS has a statutory duty to "provide for the safe-keeping of any person arrested…pending commitment to an institution" it "may contract … for the imprisonment, subsistence, care and proper employment" of federal prisoners. 18 U.S.C. §§ 4086, 4002. The United States has discretion because it is statutorily permitted to *decide* whether it will personally provide for arrestees' safe-keeping or sub-contract that responsibility.

Turning to the second part of the inquiry, this prong is also met. The Government has to weigh the public policy concerns regarding safety and medical care for prisoners before deciding whether or not to subcontract with a non-federal facility to house detainees. Numerous courts have found such a decision to qualify as a public policy concern that would be covered by the FTCA discretionary function exception. *See e.g.*, *Toomer v. Cty. of Nassau*, No. 07-CV-01495, 2009 WL 1269946 (E.D.N.Y. May 5, 2009) (explaining that when United States had to contract with Virginia Peninsula Regional jail, it "had to weigh concerns of expense, administration, payment, access to premises, and a veritable plethora of factors," all of which are policy considerations); *Johnson*, 2006 WL 572312, at *5 ("it is clear that the USMS must carefully balance competing policy factors prior to entering a contract for the housing and care of federal prisoners"); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813–14, 104 S. Ct. 2755, 2764 (1984) (explaining that discretionary function "plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals"); *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995) (finding that "decision to hire an independent contractor to render services for the United States is precisely the type of decision that the [discretionary function] exception is designed to shield from liability.")

With that, the Court finds that the Discretionary Function exemption bars any claims by Plaintiff relating to the United States' decision to contract with Westchester County.

Accordingly, the Court finds that there is no legal basis for the United States, BOP, and Acting Director of the BOP to be liable for any of the constitutional tortious conduct of which Plaintiff complains. The claims against these three actors are therefore dismissed with prejudice, and these defendants may be terminated from the docket.

**Correct Care Solutions, LLC**

The Court next addresses the arguments raised by Correct Care Solutions, LLC[2] and the Director/CEO of Correct Care Solutions ("Correct Care Defendants"). Correct Care Defendants raise two principal arguments in support of their Motion to Dismiss the Complaint. First, they argue that the Complaint lacks any allegations supporting the individual involvement of the Medical Director/CEO of Correct Care. (Correct Care Mem, ECF No. 70, at 9.) Second, they argue that Plaintiff fails to properly allege a *Monell* claim against Correct Care.

*Director/CEO of Correct Care*

The Court begins by assessing the pleading sufficiency of Plaintiff's claims against the Medical Director/CEO of Correct Care. In that vein, the Court notes that Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Therefore, in addition to alleging a constitutional violation, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

---

[2] Plaintiff incorrectly names this entity as "Correct Care Solutions, Inc." This Court will simply refer to the entity as "Correct Care" hereonafter.

While it is typically the practice of this Court to first assess whether Plaintiff has alleged a plausible constitutional violation, and then to assess whether he has alleged enough facts to support 1983 liability against individual defendants, here the allegations against the individually named defendants are so sparse that they are facially defective.

Correct Care Defendants argue that Plaintiff has not only failed to sufficiently allege involvement of the Medical Director/ CEO of Correct Care, they argue that Plaintiff fails to allege sufficient allegations to support the claims of *any* of the named individual defendants. They note that the only statements related to individually named defendants are the descriptions of who these individuals are. For example, in the "Defendant Information" section, Plaintiff alleges that the Warden / Superintendent / Sheriff is the "commander and leader of Westchester County Jail" and that the Medical Director is the "CEO of Correct Care Solutions." (Compl. at 3.)

The Court agrees with Correct Care Defendants. Upon reviewing the Complaint and Plaintiff's opposition, (Pl. Opp., ECF No. 58), it cannot find a single sentence supporting the individual involvement of either the Director/CEO of Correct Care or the Sheriff of Westchester County Jail. The only reference to these individuals is their description in the "Defendants" section of the Complaint. As Correct Care Defendants note, "[t]he mere linkage to the alleged unlawful conduct through the prison chain of command is insufficient to show personal involvement, and the doctrine of *respondent superior* is unavailable to hold supervisory officials liable." *Jenkin v. Trachtman*, 2017 U.S. Dist. LEXIS 211572, at* 12 (N.D.N.Y. Dec. 21, 2017); *Johnson v. Sposato*, No. 15-CV-3654, 2015 WL 6550566, at *3 (E.D.N.Y. Sept. 22, 2015) (dismissing a plaintiff's claims against the defendants because the complaint did "not include any factual allegations sufficient to demonstrate personal involvement" by those defendants); *Mann v. Daniels*, No. 10-CV-7540, 2011 WL 2421285, at *2 (S.D.N.Y. June 9, 2011) (holding that the plaintiff did not

plausibly allege that the defendants were personally involved because the complaint did not include facts about any "specific wrongdoing sufficient to constitute personal involvement").

Plaintiff does not allege that he ever interacted with either of the individually named Defendants during his entire medical ordeal, or ever, and does not explicitly or implicitly allege what, if any, decisions those individuals made regarding his treatment. The Court therefore dismisses the Section 1983 claims asserted against both of them. At this juncture, however, these claims are dismissed without prejudice, and Plaintiff may amend his Complaint to cure his pleading deficiencies if he is able to provide plausible facts supporting the precise actions that these two individuals took that contributed towards his injuries.

### Correct Care and Westchester County

The Court next turns to Plaintiff's inadequate medical care claims as alleged against Correct Care, LLC and Westchester County. These claims depend on a single threshold question: did defendants' actions violate Plaintiff's constitutional rights? If they did not, then none of the defendants can be liable to Plaintiff, whether through § 1983 or *Monell* vis-à-vis a policy or custom. If there was a constitutional violation, then the Court may assess proper liability.

In that vein, the Court turns to the legal standard. Correct Care Defendants note that "[a] pretrial detainee's unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." (*Id*. at 6) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Correct Care Defendants are correct. But as the Second Circuit recently explained:

> In *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court held that the state has a constitutional obligation to provide medical care to persons it is punishing by incarceration. When the state is deliberately indifferent to the medical needs of a person it has taken into custody, it violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. at 104. The Supreme Court subsequently extended the protections for prisoners established in *Estelle* to civil detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that persons in

> civil detention deserve at least as much protection as those who are criminally incarcerated.

*Small v. Orange County et al*., No. 17-3506-pr, (2d. Cir, May 24, 2019). In other words, while the Fourteenth Amendment controls due to Plaintiff's status as a pre-trial detainee, the Supreme Court has read the Eighth Amendment's protections into the Fourteenth Amendment's protections for conditions of confinement for all individuals taken into state custody. The standard is the same regardless of which amendment's prism the court looks through.

The Court proceeds with assessing the plausibility of the constitutional violation. As stated earlier, medical deliberate indifference claims under Eighth Amendment require courts to engage in a two-part inquiry, one objective and the other subjective. The subjective inquiry focuses on the defendant's motive and the objective inquiry on the conduct's effect. *Chance, 143 F.3d at 702*. Put simply, "[f]irst, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Id*. A "sufficiently serious" medical need is a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

Here, the Court finds it unquestionable that Plaintiff's injury satisfies the objective prong of being sufficiently serious. Plaintiff repeatedly alleges that he was burned and bleeding out his rear end, so much so that the second corrections officer was "sickened at the sight of the skin and bleeding almost to the point of nausea." (Compl. ¶¶ 14, 20, 21.) Plaintiff adds that he suffered excruciating pain during the night before he went to the emergency room. (*Id*. ¶ 25). Plaintiff also alleges that when he reached Westchester Medical Center Emergency Department the next day, they made the diagnosis and determination that plaintiff had "suffered significant third-degree burns" and would need to be admitted to the burn unit immediately. (*Id*. ¶ 29). Plaintiff then received emergency surgery from the burn unit as well as neurological and dermatology care. (*Id*.

¶¶ 31-32.) Plaintiff remained in the hospital receiving treatment for twenty-seven days. (*Id.* ¶ 32.) He alleges that his treatment included continuing neurological treatment and grafting his skin, post-surgery. (*Id.* ¶ 34.) In his opposing brief, he adds that he is disabled and in a wheelchair.

The classic understanding of deliberate indifference is connected with "unnecessary and wanton infliction of pain, or other conduct that shocks the conscience." *Hathaway v. Coughlin*, 99 F.3d 550 (2d Cir. 1996). Here, Plaintiff describes experiencing a "life threatening emergency" and having "trauma surgery" that left him with a "permanent disability" and "dependence on a wheelchair." (*See* Pl. Opp., ECF No. 58, at 2.) Taken as true, Plaintiff's injury satisfies any plain standard for being objectively painful and serious. The Court need not further dwell on this prong.

The Second prong for satisfying deliberate indifference is subjective. A prison official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety…" *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference also requires the prisoner to "prove that that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle*, 429 U.S. 97, 104 (1976). Again, the standard is the same put through the Eighth Amendment or the Fourteenth Amendment's due process clause. For a pretrial detainee to claim unconstitutional conditions of confinement sufficient to color an § 1983 claim for unconstitutional condition of confinement, he must demonstrate that "officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted).

Here, Plaintiff runs into trouble. While the Complaint indicates that there were three individuals involved in his treatment, there are simply no allegations that the *named individual*

*defendants*—the Warden or Superintendent of Westchester County Jail, the Medical Director or CEO of Correct Care Solutions, or the Acting Director of the BOP—even participated in Plaintiff's treatment, let alone demonstrated deliberate indifference towards Plaintiff. Absent any facts about their involvement, the Court cannot assess whether they even knew about Plaintiff's incident, let alone whether they engaged in conduct that was negligent or reckless. Moreover, as Westchester Defendants point out, Plaintiff does not specify the length of the delay or state whether his condition worsened as a result of any such delay. (*See* Westchester Mem., ECF No.65, at 11.) This is critical for Plaintiff's claim to survive because while Plaintiff's injury is unquestionably serious, his injury was not caused exclusively by the alleged delay in his treatment, but was predominantly caused by his act of sitting on the radiator. In any event, for Plaintiff to plausibly allege that he suffered a constitutional violation, he must state *what injury was caused by the inadequate or delayed treatment* and *why that delay amounted to deliberate indifference by the appropriate party*. Plaintiff's claim is close, as he does mention that he suffered excruciating physical pain throughout the night, which he claims was inadequately treated by Tylenol he received. But absent any allegations that the person who provided that medicine made an egregious error or that such pain could have been avoided if he was treated sooner, etc., Plaintiff's complaint is deficient.

*Monell Liability against Correct Care or Westchester*

Setting aside for a moment whether Plaintiff has properly pleaded his constitutional violation, Plaintiff attempts to impute liability for the alleged constitutional violation against both Westchester County and against Correct Care. As Correct Care Defendants note, liability under § 1983 against either Westchester County or Correct Care needs to arise through the criteria set out in *Monell v. Dep't of Soc. Servs.* because § 1983 does not invite counties and organizations to assume liability vicariously for the conduct of rogue individuals.

To plead a *Monell* claim, "a plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality [or organization], or (2) a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or (3) that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Iacovangelo v. Corr. Med. Care, Inc.*, 624 Fed. Appx. 10, 13-14 (2d Cir. N.Y. 2015).

Here, whether or not Plaintiff can cure his pleadings to reflect deliberate indifference and thus a constitutional violation by any *individual* involved in his treatment, he has not pleaded anywhere in his complaint that there was any *policy* or *custom* related to how inmates with burns were treated. No other custom or policy related to Plaintiff's experience is alleged regarding exposed equipment, such as radiators, etc. In other words, Plaintiff does not allege that there was any widespread practice that raises to the level of having the force of law. Similarly, he does not make any allegation regarding deliberately indifferent conduct taken by any individual County *official*, *supervisor* or *policy maker* – or any such individual on behalf of Correct Care.

The short of the Court's analysis here is that there are simply not enough facts in Plaintiff's Complaint at present for Plaintiff to hold the County or Correct Care, as a whole, liable for the arguable constitutional violations he suffered due to the acts of the *individuals* he discusses in his complaint. Accordingly, Plaintiff's *Monell* and § 1983 claims against Westchester County and Correct Care are denied, without prejudice.

### Failure to Warn – Westchester County

Plaintiff's Complaint loosely raises claims related to general common law negligence and or OSHA. (*See* Compl. ¶¶ 38-39.) "Defendant Westchester County Jail, was charged and had the

duty to keep the Plaintiff safe and in a safe facility. Defendant, Westchester County Jail, failed to

provide a facility compliant with OSHA standards.") Plaintiff also makes the related claims:

- Defendant, Westchester county Jail, failed to inform the plaintiff that the radiator might cause injury and failed to place or have signage present informing him of a dangerous of hazardous possible outcome from sitting upon them or touching a radiator in 3 West.

- Westchester County Jail failed to provide a safe environment for the Plaintiff to live within and be secure safety.

- Westchester County Jail failed to cover its radiators.

- Westchester County Jail failed to turn radiators off in accordance with the need for facilities climate control and conditions warranting no heat at that time of the year.

(Compl. ¶¶ 40-43.)

Plaintiff's main issue with these claims is that while prisoners have a constitutional right

not to be subjected to conditions of confinement that violate contemporary standards of decency,

which includes not being subjected to deliberate medical indifference, *Salahuddin v. Goord*, 467

F.3d 279, there is no constitutional right for prisoners to be forewarned about all the uncomfortable

conditions of incarceration.

Plaintiff's claim that he should have been warned not to sit on a hot radiator for five minutes

does not rise to the level of a constitutional violation because, at best, it sounds of negligence, for

which he could also be contributorily negligent. And more importantly, constitutional violations

arise from conduct that is much more egregious than mere negligence, as it must deprive an inmate

of the "minimal civilized measure of life's necessities" and/or expose inmates to a "substantial risk

of serious harm." *Johnson v. New York City*, 10-cv-6193, 2011 U.S. Dist. LEXIS 47679, at *12-

13 (S.D.N.Y. April 29, 2011).

The conclusory allegation that Westchester County jail was negligent and violates OSHA

is neither pleaded with sufficient plausible detail, nor sounds like a due process violation based on

an infringement of contemporary standards of decency. There is no question that jails could do better to manage their exposed equipment and better control their internal temperatures each season. But nothing about how Plaintiff describes the jail's failure to place signs and warn him about exposed machinery, sounds like deliberately indifferent/reckless conduct that lead to an excessive risk of pain. There are simply no facts suggesting that Westchester County had a more than negligent state of mind, and even if they were, the Court would have to factor Plaintiff's own risky decision to sit on the radiator. Accordingly, the Court finds that these claims fail under both 12(b)(6) and 12(b)(1).

*Westchester County and Warden or Superintendent or Sheriff*

For the reasons this Court has already stated, the *Monell* claims against Westchester County are denied without prejudice for the same reasons that they are denied against Correct Care. Similarly, the claims against the Warden / Superintendent / Sherriff are denied without prejudice for the same reasons that they are denied against the Medical Director/ CEO of Correct Care – an utter lack of demonstrating personal involvement sufficient to color a plausible § 1983 claim.

## CONCLUSION

For the foregoing reasons, the Federal Defendants' motion to dismiss is GRANTED *with prejudice*. Correct Care and Westchester County's Motions to Dismiss are GRANTED *without prejudice*. Plaintiff is directed to file an amended Complaint, addressing pleading deficiencies related to his § 1983 and *Monell* claims related to the delayed/inadequate treatment, including adding any necessary details, parties, and individual conduct, by June 28, 2019. This is an opportunity for Plaintiff to cure his pending causes of action, not an opportunity for Plaintiff to add new causes of action. Failure to timely amend may result in dismissal of Plaintiff's action.

The Clerk of Court is respectfully requested to terminate the pending motions at ECF Nos. 59, 68, 75. The Clerk of the Court is also directed to terminate the following defendants: The United States of America, the Federal Bureau of Prisons, and the Acting Director of the Federal Bureau of Prisons. The Clerk of the Court is further directed to correct the caption and replace "Correct Care Solutions, Inc" with "Correct Care Solutions, LLC." Finally, the Clerk of the Court is directed to mail a copy of this decision to the Plaintiff at his last address listed on ECF and to file proof of service on the docket.

Dated:   May 28, 2019                       SO ORDERED:
          White Plains, New York

NELSON S. ROMÁN
United States District Judge